UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

United States of America,

       Criminal No. 24-20558

       Hon. Jonathan J.C. Grey

v.

Aerian Porter-Craig,

  Defendant.

_____/

## United States' Sentencing Memorandum

Defendant Aerian Porter-Craig was a local eastside drug dealer whose bad batch of fentanyl-laced cocaine killed three young victims. Neither the defendant nor the victims had any intention getting involved with fentanyl on June 9, 2023. But that is the known risk of drug trafficking. Fentanyl is everywhere, and it kills. Although Porter-Craig has no criminal history, she had dealt cocaine for some time, including to the victims, rather than holding a regular job. In consideration of her personal circumstances, the government agreed to reduce her potential sentence from a mandatory prison term of 20 years to 16 years (192 months) by charging her with a lesser offense, in exchange for her guilty plea. Considering the factors discussed below, the government recommends a sentence within the terms of the plea agreement and the sentencing guidelines of between 192 and 210 months in prison.

## I.      Facts and Procedural History

Aerian Porter-Craig was arrested on September 11, 2024, pursuant to a Complaint charging her with distribution of a controlled substance resulting in death, specifically, the deaths of Adult Victim (AV)-1, AV-2, and AV-3 on June 9, 2023. (ECF No. 1). If convicted of that offense, the defendant faced a mandatory minimum sentence of 20 years in prison, and up to life, under 21 U.S.C. § 841(b)(1)(C). She was released on bond and has remained so throughout the proceedings. The defendant was then indicted for two counts of delivering a substance containing cocaine and fentanyl. (ECF No. 12). As alleged, her delivery of cocaine and fentanyl described in Count 1 resulted in the deaths of AV-1 and AV-2. Her delivery of the same substance described in Count 2 resulted in the death of AV-3.

The parties reached a plea agreement under Federal Rule of Criminal Procedure 11(c)(1)(C). (ECF No. 35). Under the terms of that agreement, the government filed the Superseding Information, which removed the statutory minimum sentence of 20 years in prison by omitting the allegation that her distribution resulted in the victims' deaths. However, the parties stipulated under USSG §1B1.2(c) that the defendant was responsible for the deaths of AV-1, AV-2, and AV-3, and her sentencing guidelines should be calculated as if she had been

convicted of those offenses as charged in the Indictment. (ECF No. 35, PageID.96).

The parties further agreed that that the minimum appropriate sentence for the defendant in this case was at least 192 months (16 years) in prison. The plea agreement did not place a limit on the maximum sentence that the Court could adjudge. The Court may arrive at its sentence either by concurrent or consecutive terms of imprisonment, so long as the total is no less than 16 years. Therefore, the maximum term of imprisonment is between 16–20 years for a concurrent sentence or up to 40 years if consecutive.

Furthermore, the government generally concurs with and adopts the statement of facts in the offense conduct portion of the Presentence Investigation Report (PSR).

## II.    The Court must determine the guidelines range.

### A. Porter-Craig's guidelines range is 168 to 210 months in prison.

The United States concurs with the Probation Office's calculation of the sentencing guidelines for the defendant. Porter-Craig's base offense level is 38, based on the stipulated offense that her crime resulted in the deaths of AV-1, AV-2, and AV-3. (PSR, ¶ 33). With a three-point reduction for acceptance of responsibility, under criminal history category I, the total offense level is 35, and her guidelines range is 168–210 months in prison.

**III.    The Court should sentence the defendant to at least 16 years in prison.**

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The relevant factors as applied to this case are addressed below.

Like so many overdoses, this case involves the inadvertent ingestion of fentanyl. Fentanyl is a synthetic, manufactured opioid. The Center for Disease Control describes it as up to 50 times more potent than heroin and 100 times stronger than morphine. ([Fentanyl Facts](#)). Pharmaceutical fentanyl is widely used by medical professionals and hospitals to manage pain in a controlled environment, but it is highly addictive and can be abused when diverted from legal sources. Illegal fentanyl, although also made in a laboratory, is even more dangerous because of the lack of controls or precision over its manufacture and subsequent mixture with other substances for distribution.

Besides abuse of fentanyl itself, others may fall victim to "bad batches" of other tainted drugs. Fentanyl powder on the illegal drug market is relatively cheap because even small amount of powder can be cut or added to other drugs to increase their potency. As a result, drug traffickers mix it into other drugs, like cocaine, at any point in the distribution stream. This includes local drug dealers who, in basements and kitchens around the Detroit area, buy bulk fentanyl powder and combine it with other drugs, a kind of perverse chemistry experiment played out on their customers. After mixing, fentanyl gives off no distinctive taste, smell, or appearance, so it is nearly impossible to know if a substance contains fentanyl without using a test strip or kit. (*Id*.). It is no surprise that, under such conditions, fentanyl-related overdoses account for nearly 70 percent of overdose deaths. (*Id*.).

Here, the victims asked the defendant for cocaine and that is what she thought she sold them. No one in this case had any known history of using, buying, or selling fentanyl, or had any intention of getting involved with it on June 9, 2023. Porter-Craig only learned that something was wrong when another customer later showed her a photograph of a fentanyl test strip, indicating that the cocaine she sold was tainted. (PSR, ¶ 21). But that is precisely the danger of the pervasiveness of fentanyl. There is no such thing as "safe" or recreational use of illegal drugs. Nor can dealers escape responsibility for injuries and deaths that result from

distributing those drugs. Everyone, dealers included, knows that fentanyl is everywhere. All it takes is one line to kill.

The defendant is a young mother of five children, with no significant criminal history. Compared to other defendants sentenced in federal court, Porter-Craig is a small-time drug dealer, nothing on the scale of those convicted of trafficking multiple kilograms of illegal drugs. However, the law imposes a severe mandatory punishment of at least 20 years in prison for a distribution of drugs that results in serious bodily injury or death. *See generally*, 21 U.S.C. § 841(b). Whether she acknowledged it or not, this is the risk of dealing drugs—that someone could die and that she could face the consequences. And while she may not have dealt huge quantities, the evidence suggests that she regularly sold small amounts of cocaine and was rather proud of its perceived quality. (See PSR, ¶ 21; ECF No. 1, PageID.8, Complaint). This was, apparently, a way to make easy money or supplement her lifestyle, in lieu of holding down regular employment. (PSR, ¶ 75–83).

The government took the defendant's personal circumstances into account when resolving this case through the plea agreement, particularly in agreeing to a minimum sentence of 16 years in prison, four years below the mandatory minimum penalty charged in the Indictment. This is a significant reduction given that the evidence against the defendant was overwhelming. As the PSR describes, the

defendant had a history of supplying the victims with cocaine. Her phone contained text messages showing that she arranged for and completed the distributions that night to the victims, and they all died of fentanyl toxicity with minutes of ingesting the tainted cocaine. (PSR, ¶¶ 11–22). It is only by luck or fate that there were no more victims that night. As noted, another customer had the wherewithal to use a test strip. (PSR, ¶ 21). Porter-Craig's phone also showed that she had arranged to sell cocaine to a fifth customer, just before she sold to the victims. But the customer had turned off her phone and did not answer the defendant's calls and texts to say that she was waiting outside to deliver the drugs. That young woman is fortunate to be alive today.

Three young people died because the defendant wanted to make a few dollars. The victims' personal details and circumstances will be presented to the Court through an additional filing and the numerous impact statements from their friends and families. This case is a tragedy on every level, for everyone involved. If the Court accepts the plea agreement, the defendant will receive a severe sentence. The minimum sentence of 192 months is near the midpoint of the guidelines range, and since the government agreed to reduce the charges, it views a sentence within that range as a reasonable one. The law recognizes several purposes in sentencing, including punishment and retribution, but no sentence will bring satisfaction to anyone. At most, it may hopefully bring some degree of

closure to the families of the victims. Many of the victims' families and friends have submitted letters to the Court, which the Court should consider in determining whether 16 years or higher is a sufficient sentence.

## IV.     Conclusion

The government requests a sentence of imprisonment between 192 and 210 months in prison.

Respectfully submitted,

JEROME F. GORGON JR.
United States Attorney

s/*Thomas Franzinger*
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9774
E-Mail: Thomas.franzinger2@usdoj.gov

Dated: April 23, 2026

## Certificate of Service

I hereby certify that on April 23, 2026, I electronically filed the Sentencing Memorandum for the United States with the Clerk of the Court of the Eastern District of Michigan using the ECF system which will send notification of such filing to the following via electronic mail to all counsel of record.

s/*Thomas Franzinger*
Thomas Franzinger
Assistant United States Attorney
211 W. Fort Street, Suite 2001
Detroit, MI  48226
Phone:  (313) 226-9774
E-Mail: Thomas.franzinger2@usdoj.gov